1

2

3

4

5

6               UNITED STATES DISTRICT COURT

7               NORTHERN DISTRICT OF CALIFORNIA

8

9    ASHBRITT, INC.,                           Case No.  20-cv-04612-JSC

            Plaintiff,
10
                                               **ORDER RE: MOTION TO DISMISS**
11      v.                                     **SECOND AMENDED COMPLAINT**

12   MARK GHILARDUCCI, et al.,                 Re: Dkt. No. 22

            Defendants.
13

14

15        AshBritt Inc. ("Plaintiff") brings a Section 1983 action against Mark Ghilarducci and Ken

16   DaRosa (collectively, "Defendants") alleging violation of its First Amendment rights, California

17   procurement law, and Federal Rule of Civil Procedure 57. Defendants' motion to dismiss

18   Plaintiff's Second Amended Complaint is now pending before the Court. [1]  (Dkt. No. 22.)  After

19   carefully considering the amended complaint and the parties' written submissions, the Court

20   concludes that oral argument is not necessary, *see* N.D. Cal. Civ. L.R. 7-1(b), VACATES the

21   December 17, 2020 hearing, and GRANTS in part and DENIES in part in the motion to dismiss.

22   Plaintiff has adequately alleged standing, but the first claim for damages based on violation of

23   Plaintiff's First Amendment rights is dismissed for failure to state a claim, and the second and

24   third claims for declaratory relief are barred by the Eleventh Amendment.

25   //

26   //

27

28   [1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. Section
     636(c). (Dkt. Nos. 8 and 11.)

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**BACKGROUND**

**A.  Second Amended Complaint Allegations**

Plaintiff is a Florida Corporation engaged in the business of disaster recovery and response services.  (Dkt. No. 21, Second Amended Complaint ("SAC") at ¶ 5. [2])  Mr. Ghilarducci is the Director of California Governor's Office of Emergency Services ("OES"), and Mr. DaRosa is the Acting Director of the California Department of Resources Recycling and Recovery ("CalRecycle").  (*Id*. at ¶¶ 6-7.)

CalRecycle engaged Plaintiff to perform cleanup services in Lake County in 2015.  (*Id*. at ¶ 17.)  During a conference call with Mr. Ghilarducci, Plaintiff's Chairman of the Board, Randy Perkins, criticized the way the state paid its contractors.  (*Id*.)  In a subsequent call, Mr. Ghilarducci stated that he would ensure, to the best of his ability, that Plaintiff would not work in the state of California.  (*Id*.)  Plaintiff contends that since Mr. Ghilarducci's statement, CalRecycle has rejected all of Plaintiff's bids to work on debris removal projects.  (*Id*. at ¶ 18.)

In May 2020, OES gave CalRecycle the authority to manage a tree removal, transport, and disposition project in Butte County.  (*Id*. at ¶ 11-12.)  CalRecycle issued an invitation for independent contractors to submit bids to work on the project.  (*Id*. at ¶11.)  This invitation included a "California Only Restriction" which limits eligibility for bid acceptance to local and California-based corporations.  (*Id*. at ¶ 13.)  AshBritt "would have submitted a bid, sought to perform work on the contract, and performed such work, had it not been ineligible under the 'California Only Restriction.'" (*Id*. at ¶ 14.)  AshBritt has "challenged the 'California Only Restriction' by questioning its validity in inquiries to CalRecycle."  (*Id*. at ¶ 15.)  It believes that the "California Only Restriction" has been implemented to exclude Plaintiff from bidding on the project.  (*Id*. at ¶ 16.)

**B. Procedural Background**

Plaintiff filed the complaint in this action on July 10, 2020.  (Dkt. No. 1.)  Three days later, Plaintiff filed its First Amended Complaint which alleged two claims for relief: (1) violation of 42 U.S.C. § 1983 and the Privileges and Immunities Clause of Article IV of the Constitution, *see* U.S.

---

[2] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

United States District Court
Northern District of California

Const. art. IV, § 2, cl. 1.; and (2) for declaratory relief.  The Court granted Defendants' motion to dismiss Plaintiff's Privileges and Immunities Clause claim.  (Dkt. No. 20.)  Plaintiff thereafter filed the now-operative SAC which includes two Section 1983 claims seeking damages and declaratory relief based on violation of AshBritt's First Amendment Rights, and a claim seeking declaratory relief under "California Procurement Statutes and Decisional Law and Federal Rule of Civil Procedure 57."  (Dkt. No. 21.)  Defendants responded by filing the now pending motion to dismiss.

## DISCUSSION

Defendants move to dismiss the SAC contending that (1) Plaintiff lacks standing because it cannot allege that it has been injured; (2) the Eleventh Amendment bars the request for declaratory relief, and (3) Plaintiff cannot state a claim for First Amendment retaliation.

### A.  Standing

"Standing is a necessary element of federal-court jurisdiction" and a "threshold question in every federal case." *Thomas v. Mundell*, 572 F.3d 756, 760 (9th Cir. 2009) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Article III standing consists of three "irreducible constitutional minimum" requirements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). These elements are often referred to as injury in fact, causation, and redressability. *See, e.g., Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020). Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing the existence of Article III standing and, at the pleading stage, "must clearly [ ] allege facts demonstrating each element." *Spokeo*, 136 S. Ct. at 1547 (internal quotation marks and citation omitted); *see also Baker v. United States*, 722 F.2d 517, 518 (9th Cir. 1983) ("The facts to show standing must be clearly apparent on the face of the complaint.").

An injury in fact is "an invasion of a legally protected interest" that is (1) "concrete," (2) "particularized," and (3) "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). To be "particularized," an

United States District Court
Northern District of California

1    injury "must affect the plaintiff in a personal and individual way," while "concreteness" requires

2    an injury to be "'de facto'; that is, it must actually exist." *Id*. at 1548 (internal citation omitted).

3    The requirement that an injury be "actual or imminent" "ensure[s] that the alleged injury is not too

4    speculative for Article III purposes—that the injury is certainly impending." *Clapper v. Amnesty*

5    *Int'l USA*, 568 U.S. 398, 409 (2013). Further, there must be a sufficient "causal connection

6    between the injury and the conduct complained of." *United States v. Hays*, 515 U.S. 737, 743

7    (1995).

8         Defendants insist that Plaintiff lacks standing because (1) it cannot demonstrate an injury

9    because it never applied for the bid with the California Only Restriction, and (2) it cannot allege

10   that it would have obtained the bid, if it had applied.  Plaintiff counters that it need not have

11   submitted a bid because it would have been futile to do so and it is not required to show that it

12   would have been awarded the bid to establish standing.

13        "[S]tanding does not require exercises in futility." *Taniguchi v. Schultz*, 303 F.3d 950, 957

14   (9th Cir.2002).   Courts do not require plaintiffs to submit a formal application where the

15   challenged policy or ordinance unambiguously rendered an application futile. *See, e.g., id*. at 950

16   ("the [challenged] statute unambiguously precludes Taniguchi, as [a lawful permanent resident]

17   convicted of an aggravated felony, from the discretionary waiver. To apply for the waiver would

18   have been futile on Taniguchi's part and, therefore, does not result in a lack of standing."); *Desert*

19   *Outdoor Advertising, Inc. v. City of Moreno Valley*, 103 F.3d 814 (9th Cir.1996) ("Applying for a

20   permit would have been futile because: (1) the City brought state court actions against [the

21   plaintiffs] to compel them to remove their signs; and (2) the ordinance flatly prohibited [the

22   plaintiffs'] off-site signs[.]"); *see also Dragovich v. United States Dep't of the Treasury*, 764

23   F.Supp.2d 1178, 1185 (N.D. Cal. 2011) (holding that same sex couples were not required to

24   submit an application for state-maintained long-term care insurance plan in order to establish

25   standing where the government agency made abundantly clear in written and oral communications

26   that their applications would be rejected and the relevant laws "plainly result" in the exclusion of

27   same sex couples).

28        Defendants' argument that these cases and others like them are distinguishable because

4

United States District Court
Northern District of California

1  they "concern the language and implementation of statutes, regulations, ordinances, and benefits

2  programs—permanent or long-lasting provisions with a continuing impact on the rights of the

3  broader public" is unpersuasive.  (Dkt. No. 24 at 10:18-20.)  Defendants do not cite any legal

4  authority in support of their argument that futility only applies when a plaintiff is challenging a

5  "statute, regulation, or ordinance" with "long-lasting provisions."  Nor is Defendants' reliance on

6  *Madsen v. Boise State Univ.*, 976 F.2d 1219 (9th Cir. 1992), availing.  In *Madsen*, the court found

7  that there were insufficient allegations to support a futility argument, noting in part that there were

8  no "allegations that the University had an impenetrable policy—akin to a 'Whites Only' sign—

9  which would have rendered it impervious to any efforts to educate it as to defects in its policies."

10  *Id*. at 1222.  Here, in contrast, there is an allegation of "an impenetrable policy."  The SAC

11  alleges:

12    Under the provision entitled "California Only Restriction," the
13    Solicitation limits eligibility to a "business or corporation whose
      principal office is located in California, and the owners, or officers if
      the entity is a corporation, are domiciled in California," or a "business
14    or corporation that has a major office or manufacturing facility
      located in California and that has been licensed by the state on a
15    continuous basis to conduct business within the state and has
      continuously employed California residents for work within the state
16    during the three years prior to submitting a bid or proposal for a state
      contract." This restriction on eligibility applies to any entity that bids
17    as a prime contractor, that performs work as a subcontractor and that
      is a member of a joint venture that seeks to perform Project works as
18    either a prime or subcontractor.

19  (SAC at ¶ 13.)  These allegations are sufficient to demonstrate that it would have been futile to

20  apply here.

21      Likewise, Plaintiff's allegation that "[i]t would have submitted a bid, sought to perform

22  work on the contract, and performed such work, had it not been ineligible under the 'California

23  Only Restriction" (SAC at ¶ 14) is sufficient to demonstrate competitor standing. *See Planned*

24  *Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d

25  1100, 1108 (9th Cir. 2020) ("A plaintiff need not participate in the competition; the plaintiff need

26  only demonstrate that it is 'able and ready to bid.' It is a plaintiff's ability and readiness to bid that

27  ensures an injury-in-fact is concrete and particular; the requirement precludes the airing of

28  generalized grievances.") (internal citations omitted).

5

1    *McQuiston v. City of Los Angeles*, 560 F. App'x 684, 685 (9th Cir. 2014), does not

2    persuade the Court otherwise.  In *McQuiston*, the court found no Article III injury because

3    "McQuiston has never applied for a variance and, thus, has never been denied a variance. His

4    alleged injury is therefore hypothetical, because he simply assumes he would not be granted a

5    variance if he applied."  Here, in contrast, Plaintiff has bid on projects and has even performed

6    work on projects—it is not a stranger to the process.

7          Accordingly, Defendants' motion to dismiss based on lack of Article III standing is denied.

8    **B. Eleventh Amendment Immunity**

9          Next, Defendants contend that Plaintiff's declaratory relief claims are barred by the

10   Eleventh Amendment.  The Eleventh Amendment bars suits against States and state agencies in

11   federal courts where the State has not waived its immunity. *Carmen v. San Francisco Unified Sch.*

12   *Dist.*, 982 F. Supp. 1396, 1402 (N.D. Cal. 1997) aff'd, 237 F. 3d 1026 (9th Cir. 2001) (internal

13   citations omitted). The State of California has not waived its immunity from Section 1983

14   lawsuits. *Dittman v. California*, 191 F.3d 1020, 1025-26 (9th Cir. 1999). The Eleventh

15   Amendment bars suits against state agencies, as well as those where the state itself is named as a

16   defendant. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). In

17   addition, a plaintiff's suit "against state officials in their official capacities" is treated "as a suit

18   against the state of California." *Holley v. California Dep't Of Corr.*, 599 F.3d 1108, 1111 (9th Cir.

19   2010). "[A] suit 'against state officials that is in fact a suit against a State is barred regardless of

20   whether it seeks damages or injunctive relief.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465

21   U.S. 89, 102 (1984). The Eleventh Amendment "does not, however, bar actions for prospective

22   declaratory or injunctive relief against state officers in their official capacities for their alleged

23   violations of federal law." *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th

24   Cir. 2012) (citing *Ex Parte Young*, 209 U.S. 123, 155-56 (1908)).

25         There is no dispute that Plaintiff's second and third claims for declaratory relief are

26   brought against state actors—Ghilarducci and DaRosa—in their official capacity.  Thus, the

27   claims are barred by the Eleventh Amendment unless *Ex Parte Young* applies.  Plaintiff insists that

28   *Ex Parte Young* applies because the First Amendment violation at issue here is continuing and not

United States District Court
Northern District of California

United States District Court
Northern District of California

1   "finally complete." (Dkt. No. 23 at 16:15.) In support of this argument, Plaintiff relies on a

2   number of "facts"—none of which are alleged in the complaint. *Id*. at 16:18-20 (stating that the

3   "status of the award to a bidder, the timing of payment and whether work has commenced, and

4   whether it can be rescinded…all remain to be determined.") The SAC alleges that the deadline for

5   the bid containing the California Only Restriction was July 20, 2020. (SAC at ¶ 12.) Further,

6   Defendants allegedly relied on "emergency orders issued regarding the Camp Fire" to justify the

7   restriction which supports an inference that the restriction is only being used for the bid on this

8   project. (SAC at ¶ 32.)

9   "Whether the *Ex parte Young* doctrine applies in this case turns primarily upon one

10   question: Is the relief the plaintiffs seek prospective, aimed at remedying an ongoing violation of

11   federal law, or is it retrospective, aimed at remedying a past violation of the law?" *Cardenas v.*

12   *Anzai*, 311 F.3d 929, 935 (9th Cir. 2002). Plaintiff's insistence that it seeks prospective relief

13   because of the continuing nature of the harm is unsupported by the SAC's allegations. Plaintiff

14   alleges that Defendants included the California-Only Restriction in the bid for the Camp Fire

15   clean-up project in retaliation for statements Mr. Perkins made in violation of Plaintiff's First

16   Amendment rights, and that the bid on the project has closed. These allegations do not support a

17   plausible inference of an ongoing violation of federal law. Accordingly, the Eleventh Amendment

18   bars Plaintiff's second claim for declaratory relief based on violation of its First Amendment

19   rights.

20   The Eleventh Amendment likewise bars Plaintiff's third claim for declaratory relief based

21   on violations of "California Procurement Statutes and Decisional Law." The *Ex Parte Young*

22   exception does not apply to state law claims. *See Virginia Office for Prot. & Advocacy v. Stewart*,

23   563 U.S. 247, 268 (2011); *see also Doe v. Regents of the Univ. of California*, 891 F.3d 1147, 1153

24   (9th Cir. 2018) ("the *Young* exception does not apply when a suit seeks relief under state law, even

25   if the plaintiff names an individual state official rather than a state instrumentality as the

26   defendant.")

27   Accordingly, Plaintiff's second and third claims for declaratory relief are dismissed as

28   barred by the Eleventh Amendment. The third claim is dismissed without leave to amend as *Ex*

1   *Parte Young* does not apply as a matter of law.  The second claim is dismissed with leave to

2   amend, but only if Plaintiff in good faith can plead facts sufficient to plausibly support an

3   inference of a prospective violation.

4       **C.  First Amendment Retaliation**

5           Finally, Defendants move to dismiss Plaintiff's First Amendment retaliation claim for

6   failure to state a claim.  Plaintiff insists that Defendants have waived this argument by failing to

7   make it in its initial motion to dismiss. Federal Rules of Civil Procedure 12(g)(2) technically

8   prohibits successive motions to dismiss raising arguments that could have been made in a prior

9   motion. Fed. R. Civ. P. 12(g)(2) ("Except as provided in Rule 12(h)(2) or (3), a party that makes a

10  motion under this rule must not make another motion under this rule raising a defense or objection

11  that was available to the party but omitted from its earlier motion.").  However, as the Ninth

12  Circuit has observed:

> [w]e read Rule 12(g)(2) in light of the general policy of the Federal
> Rules of Civil Procedure, expressed in Rule 1. That rule directs that
> the Federal Rules 'be construed, administered, and employed by the
> court and the parties to secure the just, speedy, and inexpensive
> determination of every action and proceeding.' Fed. R. Civ. P. 1.
> Denying late-filed Rule 12(b)(6) motions and relegating defendants
> to the three procedural avenues specified in Rule 12(h)(2) can produce
> unnecessary and costly delays, contrary to the direction of Rule 1.

13

14

15

16

17  *In re Apple iPhone Antitrust Litig*., 846 F.3d 313, 318 (9th Cir. 2017), aff'd sub nom. *Apple Inc. v.*

18  *Pepper*, 139 S. Ct. 1514 (2019).  The Court thus exercises its discretion here "to consider the new

19  arguments in the interests of judicial economy," rather than requiring Defendants to file a Rule

20  12(c) motion.  *See Amaretto Ranch Breedables, LLC v. Ozimals, Inc*., No. C 10-05696 CRB, 2011

21  WL 2690437, at *2 (N.D. Cal. July 8, 2011).

22          To state a First Amendment retaliation claim, a plaintiff must show "that (1) he was

23  engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of

24  ordinary firmness from continuing to engage in the protected activity and (3) the protected activity

25  was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d

26  920, 932 (9th Cir. 2016) (quoting *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir.

27  2006)). To ultimately "prevail on such a claim, a plaintiff must establish a 'causal connection'

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'"

2    *Nieves v. Bartlett*, —— U.S. ——, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman* v. Moore, 547

3    U.S. 250, 259 (2006)).  In particular, a plaintiff must show that the defendant's retaliatory animus

4    was "a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been

5    taken absent the retaliatory motive." *Id*. (quoting *Hartman*, 547 U.S. at 260).

6         Defendants insist that Plaintiff's First Amendment retaliation claim fails because (1) the

7    allegations do not plausibly suggest retaliation; and (2) Plaintiff has not alleged an injury

8    proximately caused by the California-Only Restriction.  The Court addresses each argument in

9    turn.

10        First, there is no dispute that Plaintiff engaged in a constitutionally protected activity when

11   Mr. Perkins "pointedly criticized the wasteful and inefficient basis on which the State was paying

12   its contractors."  (SAC at ¶ 17.)  The issue is whether Plaintiff has plausibly alleged a connection

13   between this event in 2015 and CalRecycle's decision five years later to include the California-

14   Only Restriction with the Camp Firm cleanup solicitation and whether Plaintiff has plausibly

15   alleged any connection between this protected activity and Defendant DaRosa.  While "timing can

16   properly be considered as circumstantial evidence of retaliatory intent," *Pratt v. Rowland*, 65 F.3d

17   802, 808 (9th Cir. 1995), there is no rule requiring a certain temporal proximity.  In fact, the Ninth

18   Circuit "caution[s] that a specified time period cannot be a mechanically applied criterion. A rule

19   that any period over a certain time is per se too long (or, conversely, a rule that any period under a

20   certain time is per se short enough) would be unrealistically simplistic.*"  Coszalter v. City of*

21   *Salem*, 320 F.3d 968, 977–78 (9th Cir. 2003).  However, the time period at issue in *Coszalter* was

22   three to eight months.  Plaintiff has not identified any case where the retaliatory motive was based

23   on conduct five years prior. In *Addison v. City of Baker City*, 258 F. Supp. 3d 1207, 1222 (D. Or.

24   2017), aff'd, 758 F. App'x 582 (9th Cir. 2018), on which Plaintiff relies, the allegedly retaliatory

25   conduct began shortly after the protected activity although the primary retaliatory conduct

26   challenged occurred later because that was the conduct within the statute of limitations period.

27        Plaintiff also insists that the allegations that since 2015 it has bid on other recovery and

28   debris removal projects, but it has been rejected on each occasion, support an inference of

1    retaliation.  (SAC at ¶ 18.)  In addition, Plaintiff suggests that the reason offered for the

2    California-Only Restriction—invocation of an emergency proclamation and executive order by

3    former Governor Brown which suspended the application of California procurement law—is

4    pretextual because the removal and cleanup for the Camp Fire was completed by November 2019.

5    (*Id*. at ¶ 15.)  The latter argument does not make sense as the at-issue project was for "a project

6    entitled 'Tree Removal Services for the Camp Fire in Butte County'" (*id*. at ¶ 11); in other words,

7    Plaintiff itself alleges the project was for the Camp Fire so to accept Plaintiff's argument would

8    mean the entire project was a pretext.  It does not take that position.

9            With respect to Plaintiff's contention that its allegation that it has unsuccessfully bid on

10   other projects since 2015 demonstrates ongoing retaliation, the Court is not persuaded.  Plaintiff

11   has not alleged any facts which suggest that the motive for rejecting Plaintiff's bids for the other

12   projects was retaliation.  Nor has Plaintiff alleged any facts regarding those losing bids such as

13   when the bids were submitted, how many unsuccessful bids were submitted, and other facts from

14   which the Court could infer a retaliatory motive for the rejection of Plaintiff's bids.  As currently

15   pled, there are a number of equally plausible explanations for the rejection of the other bids such

16   as—as Defendants' suggest—that Plaintiff did not submit the lowest bid.  *See Ashcroft v. Iqbal*,

17   556 U.S. 662, 682 (2009) (finding that where there is an "obvious alternative explanation" asking

18   "us to infer, discrimination is not a plausible conclusion.") (internal citation omitted).

19          Further, beyond alleging that Defendant DaRosa "had responsibility for developing or

20   approving the government contract solicitation that is the subject of this action, and has authority

21   over its terms and provisions," Plaintiff has not alleged any connection between DaRosa and the

22   alleged protected activity or retaliatory action. (SAC at ¶ 7.)  To the extent that Plaintiff seeks to

23   proceed on an integral participation theory, while the integral participation standard "does not

24   require that each [defendant's] actions themselves rise to the level of a constitutional violation, [ ]

25   it does require some fundamental involvement in the conduct that allegedly caused the violation."

26   *Blankenhorn v. City of Orange*, 485 F.3d 463, 492 n.12 (9th Cir. 2007) (citing *Boyd v. Benton*

27   *Cnty*., 374 F.3d 773, 780 (9th Cir. 2004)).  Plaintiff's allegations do not plausibly suggest that

28   DaRosa was fundamentally involved here.

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1    Second, Plaintiff has likewise not alleged an injury that was plausibly proximately caused

2    by the alleged retaliatory conduct here.  "It is not enough to show that an official acted with a

3    retaliatory motive and that the plaintiff was injured—the motive must cause the injury."  *Nieves v.*

4    *Bartlett*, 139 S. Ct. 1715, 1722 (2019).  Plaintiff does not allege facts that plausibly support an

5    inference that the retaliatory motive caused the injury alleged—"financial loss" (SAC at ¶ 23)—as

6    there are no allegations to support the inference that Plaintiff would have been awarded the bid

7    but-for the retaliatory motive.  The conclusion that Plaintiff has adequately alleged an injury for

8    purposes of Article III standing, but not for purposes of stating a plausible retaliation claim, is not

9    inconsistent with this conclusion.  *See Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).

10   "*Twombly* and *Iqbal* are ill-suited to application in the constitutional standing context because in

11   determining whether plaintiff states a claim under 12(b)(6), the court necessarily assesses the

12   merits of plaintiff's case."  *Id*.  In contrast, "the threshold question of whether plaintiff has

13   standing (and the court has jurisdiction) is distinct from the merits of his claim."  *Id*.  "The

14   jurisdictional question of standing precedes, and does not require, analysis of the merits."  *Equity*

15   *Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1189 n. 10 (9th Cir. 2008).  As

16   discussed *supra*, Plaintiff's allegation of injury fails under the *Iqbal/Twombly* standard.

17   Accordingly, Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim

18   is granted.  This dismissal is with leave to amend to the extent that Plaintiff has a good faith basis

19   for alleging additional facts necessary to plead a First Amendment retaliation claim consistent

20   with this Order.

21   **CONCLUSION**

22   For the reasons stated above, Defendants' motion to dismiss is GRANTED IN PART and

23   DENIED IN PART.  Plaintiff's first claim for damages based on violation of his First Amendment

24   rights is dismissed for failure to state a claim with leave to amend. Its second and third claims for

25   declaratory relief are barred by the Eleventh Amendment and therefore dismissed.  Leave to

26   amend as to the second is granted, but denied as to the third.

27   An amended complaint, if any, shall be filed by January 7, 2021.

28   The Court resets the Initial Case Management Conference for February 18, 2021 at 1:30

p.m.

   This Order disposes of Docket No. 22.

   **IT IS SO ORDERED.**

Dated: December 16, 2020

                  JACQUELINE SCOTT CORLEY
                  United States Magistrate Judge

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28