UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHBRITT, INC.,<br><br>  Plaintiff,<br><br>  v.<br><br>MARK GHILARDUCCI, et al.,<br><br>  Defendants. | Case No. 20-cv-04612-JSC<br><br>**ORDER RE: DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Re: Dkt. No. 30 |

AshBritt Inc., a Florida corporation, brings this Section 1983 action against Mark Ghilarducci, Director of California Governor's Office of Emergency Services ("OES"), and Ken DaRosa, Acting Director of the California Department of Resources Recycling and Recovery (CalRecycle) alleging violation of its First Amendment rights. AshBritt contends that Defendants adopted a "California-only" requirement for a project put out for bid in May 2020 in retaliation for comments that AshBritt's Chairman of the Board made in 2015. Defendants' motion to dismiss AshBritt's Third Amended Complaint is now pending before the Court.[1] (Dkt. No. 30.) Having considered the parties' briefing and having had the benefit of oral argument on February 28, 2021, the Court GRANTS the motion to dismiss. After multiple opportunities, AshBritt has still not alleged facts that support a plausible inference that but-for Defendants' retaliatory animus CalRecycle would not have adopted the California-only restriction and AshBritt concedes that its claim for declaratory relief is barred by the Eleventh Amendment.

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. Section 636(c). (Dkt. Nos. 8 and 11.)

**BACKGROUND**

**A. Third Amended Complaint Allegations**

AshBritt is a Florida Corporation engaged in the business of disaster recovery and response services. (Dkt. No. 29, Third Amended Complaint ("TAC") at ¶ 1.[2]) Mr. Ghilarducci is the Director of California Governor's Office of Emergency Services ("OES"), and Mr. DaRosa is the Acting Director of the California Department of Resources Recycling and Recovery ("CalRecycle"). (*Id*. at ¶¶ 2-3.)

In the Fall of 2015, Lake County engaged AshBritt "to perform clean up services related to the Butte Fire." (*Id*. at ¶ 7.) During a conference call with Mr. Ghilarducci, AshBritt's Chairman of the Board, Randy Perkins, criticized the way the state paid its contractors. (*Id*.) In a subsequent call, Mr. Ghilarducci stated that he would ensure, to the best of his ability, that AshBritt would not work in the state of California. (*Id*.) AshBritt contends that since Mr. Ghilarducci's statement, CalRecycle has rejected all of AshBritt's bids to work on debris removal projects. (*Id*. at ¶¶ 11, 21.)

In particular, AshBritt identifies bids it submitted in December 2018 or January 2019 for clean up work in connection with the Camp Fire and Woolsey Fire. (*Id*. at ¶¶ 8-10.) These bids were awarded to entities other than AshBritt. (*Id*. at ¶ 11.) In late January 2019, AshBritt filed protests with respect to both bids arguing that "CalRecycle had understated the debris cleanup estimates in the solicitation and failed to recognize unbalanced bidding by the selected bidder, which similarly made its price appear low, but created a risk that actual costs would be much higher." (*Id.* at ¶¶ 12-13.) The Sacramento Bee ran an article following this entitled "*Will California pay too much for Camp Fire cleanup? Why didn't it choose lowest bidder?*" Referencing protests filed in response to the award, the article stated: "An official with one of those firms, Florida-based Ashbritt Environmental, accused the state of giving a competitor an unfair advantage that will cause debris cleanup costs to soar by the end of the year-long effort." (*Id*. at ¶ 14.) Both of AshBritt's bid protests were denied as was AshBritt's petition for writ of

---

[2] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

mandamus filed in the Sacramento Superior Court regarding the Camp Fire debris clean-up project. (*Id*. at ¶¶ 15-16.)

In May 2020, OES gave CalRecycle the authority to manage the removal, transport, and disposition of certain fire-related trees from properties in Butte County. (*Id*. at ¶ 19.) That month CalRecycle issued a solicitation for contractors to submit bids to work on the project. (*Id*. at ¶ 18.)

> This solicitation sought to exclude non-California entities from bidding on the Project. It states that to "encourage the economic recovery and well-being of the residents of an area where a disaster or state of emergency has been declared, CalRecycle encourages local and California-based contractors to bid on this IFB. Under the provision entitled "California Only Restriction," the Solicitation limits eligibility to a "business or corporation whose principal office is located in California, and the owners, or officers if the entity is a corporation, are domiciled in California," or a "business or corporation that has a major office or manufacturing facility located in California and that has been licensed by the state on a continuous basis to conduct business within the state and has continuously employed California residents for work within the state during the three years prior to submitting a bid or proposal for a state contract."

(*Id.* at ¶ 20.) AshBritt "would have submitted a bid, sought to perform work on the contract, and performed such work, had it not been ineligible under the 'California Only Restriction.'" (*Id*. at ¶ 21.) It alleges that CalRecycle included the "California Only Restriction"—and excluded all corporations outside of California from bidding on the project—to get back at AshBritt for its Chairman's 2015 comments and the early 2019 newspaper article.

**B. Procedural Background**

AshBritt filed the complaint in this action on July 10, 2020. (Dkt. No. 1.) Three days later, AshBritt filed its First Amended Complaint which alleged two claims for relief: (1) violation of 42 U.S.C. § 1983 and the Privileges and Immunities Clause of Article IV of the Constitution, *see* U.S. Const. art. IV, § 2, cl. 1.; and (2) for declaratory relief. The Court granted Defendants' motion to dismiss AshBritt's Privileges and Immunities Clause claim. (Dkt. No. 20.) AshBritt thereafter filed its Second Amended Complaint which includes two Section 1983 claims seeking damages and declaratory relief based on violation of AshBritt's First Amendment Rights, and a claim seeking declaratory relief under "California Procurement Statutes and Decisional Law and Federal Rule of Civil Procedure 57." (Dkt. No. 21.) Defendants moved to dismiss for lack of Article III standing and for failure to state a claim. (Dkt. No. 22.) The Court denied Defendants'

motion to dismiss based on standing, but granted the motion with respect to AshBritt's first claim for damages based on violation of its First Amendment rights for failure to state a claim, and dismissed the second and third claims for declaratory relief as barred by the Eleventh Amendment. (Dkt. No. 28.) In the TAC, AshBritt repleads the same two claims: (1) a Section 1983 claim for violation of its First Amendment rights, and (2) a request for declaratory relief based on the same. (Dkt. No. 29.)

## DISCUSSION

This is the third time the Court has considered whether AshBritt has adequately pled its claims. Because AshBritt concedes that it has not and cannot allege an ongoing violation of federal law for purposes of its declaratory relief claim, that claim is dismissed as barred by the Eleventh Amendment. (Dkt. No. 32 at 22.) *See Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) ("The Eleventh Amendment "does not, however, bar actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law.") (citing *Ex Parte Young*, 209 U.S. 123, 155-56 (1908)). This concession leaves only Plaintiff's Section 1983 First Amendment retaliation claim.

To state a First Amendment retaliation claim, a plaintiff must show "that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (quoting *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)). To ultimately "prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, ––– U.S. ––––, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman* v. Moore, 547 U.S. 250, 259 (2006)). In particular, a plaintiff must show that the defendant's retaliatory animus was "a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id*. (quoting *Hartman*, 547 U.S. at 260). The TAC does not allege facts that plausibly support an inference that the California-only restriction was included in retaliation for AshBritt's protected activity.

4

1    First, AshBritt's "bare allegation" that "[a] substantial or motivating factor for the inclusion of this restriction was to exclude AshBritt from eligibility because of the constitutionally protected speech and petitioning activity in which it has engaged" (TAC at ¶ 22), is a conclusory statement that is "little more than a formulaic recitation of the elements." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009); *see also Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 870 (9th Cir. 2016) ("At the pleading stage, a plaintiff adequately asserts First Amendment retaliation if the complaint alleges plausible circumstances connecting the defendant's retaliatory intent to the suppressive conduct.").

Second, Ghilarducci's 2015 comment and the 2019 newspaper article are—whether considered together or separate—insufficient to support a plausible inference that CalRecycle adopted a restriction that excluded every potential bidder in the world except for those from California in order to retaliate against AshBritt; that is, these allegations do not plausibly support an inference that but-for Ghilarducci and De Rosa's retaliatory animus, CalRecycle would not have adopted the California only restriction. *See Nieves,* 139 S. Ct. at 1722. While it is possible that CalRecycle adopted the California-only restriction to retaliate against a single Florida corporation which had never done business with CalRecycle, it is not plausible given the five years between the alleged retaliatory comment and the adoption of a broad restriction that on its face is not targeted specifically at AshBritt but rather *at every single company in the world from outside of California*.  *See IqbaI,* 556 U.S. at 680 (to satisfy Federal Rule of Civil Procedure 8, a complaint's allegations must support an inference that crosses the line from conceivable to plausible). Citation to the 2019 newspaper article is not sufficient as it was published one year before the "California only restriction" was imposed—a restriction that on its face targeted every otherwise qualified company outside of California.

Third, there is an "obvious alternative explanation" to retaliation against AshBritt for CalRecycle's adoption of the California only restriction, *Iqbal*, 556 U.S. at 682; namely, that it was to "'encourage the economic recovery and well-being of residents of an area where a disaster or state of emergency has been declared.'" (TAC ¶ 20.) The restriction benefits California residents by ensuring that a company with California employees will be paid by the California

5

state agency with California tax dollars. AshBritt attempts to rebut CalRecycle's published motivation by arguing that by making the restriction "California only" rather than "local companies only" it does not help the local community impacted by the fire. But AshBritt does not allege that there were sufficient local companies qualified to perform the work and, in any event, common sense dictates that the local residents impacted by the fire benefit from the State's dollars going to California companies with California employees rather than to non-California companies.

AshBritt alleges further that when it queried CalRecycle as to how it was able to adopt the California only restriction in light of California procurement law, CalRecycle responded by identifying a November 2018 emergency proclamation "by then-California Governor Brown as to the Camp Fire that suspended application of the procurement law 'only to the extent necessary for expediting the removal and cleanup of debris from the wildfire[.]" (TAC ¶ 30.) AshBritt contends this explanation makes no sense as CalRecycle announced that the removal and cleanup of debris from the wildfires was completed no later than November 2019." (*Id*.) AshBritt's argument does not make sense. It does not dispute that Governor Brown suspended the procurement law and that the suspension was in effect when CalRecycle adopted the California-only restriction. Thus, CalRecycle's response to AshBritt as to how it was able to adopt the California-only restriction notwithstanding California procurement law is logical and does not support an inference that the California-only restriction was adopted to target AshBritt. Further, the May 2020 solicitation with the California-only restriction was for removal of fire-related trees (*id.* at ¶ 19); according to AshBritt's own allegation, in May 2020 there was still work to be done as a result of the fire.

Fourth, the cases upon which AshBritt relies allege far different circumstances. *See, e.g.*, *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 980-81 (9th Cir. 2002) (reversing the district court's grant of summary judgment on a First Amendment retaliation claim brought by a physician against his former employer noting in that "[t]he proximity in time between each of these adverse actions and Dr. Ulrich's speech is well within time frames we have held sufficient for a jury to infer discriminatory motive."); *Arizona Students' Ass'n*, 824 F.3d at 862 (holding that the Arizona Students' Association stated a First Amendment retaliation claim against the Arizona

6

Board of Regents based the Regents suspension of collection and remittance of the student fees which funded the student association following the association's support of a ballot initiative).

*Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917 (9th Cir. 2004), does not suggest that AshBritt's retaliation theory is plausible notwithstanding the obvious explanation for the broadly-applicable California-only restriction imposed five years after Ghilarducchi's alleged statement demonstrating animus. In *Alpha Energy, Inc.*, the County had a 10-year relationship with the plaintiff company. After the plaintiff's principal testified against the County in another matter, the County began to redraft contracts with a stated intent to make the plaintiff company ineligible. *Id.* at 922. Further, the redrafting of the contracts began only three months after the conduct for which the County was allegedly retaliating against the plaintiff. *Id.* at 930. No remotely similar allegations are present here.

Accordingly, AshBritt's First Amendment retaliation claim is dismissed for failure to state a claim. This dismissal is without leave to amend as AshBritt has had multiple opportunities to cure the pleading deficiencies on this claim, but has failed to articulate any basis for doing so; further leave to amend would thus be futile.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' motion to dismiss without leave to amend. Judgment will be entered by separate order.

This Order disposes of Docket No. 30.

**IT IS SO ORDERED.**

Dated: March 1, 2021

JACQUELINE SCOTT CORLEY
United States Magistrate Judge